```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION


JACINTOPORT INTERNATIONAL,     §
L.P.,                          §
                               §
        Plaintiff,             §
                               §
v.                             §    CIVIL ACTION NO. H-08-3081
                               §
SEALIFT INC.,                  §
                               §
        Defendant.             §
```

MEMORANDUM AND ORDER

Pending is Defendant Sealift, Inc.'s ("Sealift") Motion to Dismiss Plaintiff's Third Amended Complaint (Document No. 38).[1] After having reviewed the motion, responses, replies, supplements, and applicable law, the Court concludes as follows.

I. Background

Plaintiff Jacintoport International, LLC f/k/a Jacintoport International, L.P. is a marine terminal operator, warehouseman,

---

[1] Defendant the United States in its Answer asserts defenses that the Court lacks subject matter jurisdiction over Plaintiff's claims against the United States, and also that the Third Amended Complaint fails to state a claim upon which relief can be granted. Although Plaintiff has not pled that it complied with the requirements of the Federal Tort Claims Act or the Contracts Disputes Act, or otherwise shown an "unequivocal waiver of sovereign immunity" see Freeman v. United States, 556 F.3d 326, 334 (5th Cir. 2009), the United States has filed no motion and the parties have submitted no briefing on these defenses.

and stevedore with a facility in the Port of Houston.[2]  In the Fall of 2007, it received food aid cargo (the "Cargo") in rail cars at its Houston terminal, shipped by Defendant United States of America through Defendant United States Agency for International Development, and intended to be carried overseas by Sealift.[3] Sealift's vessels were late to arrive to load the Cargo, and Plaintiff had to store the Cargo longer than scheduled.  This prevented Plaintiff from handling new cargo as per its schedule and caused it to retain rail cars longer than the free time permitted by the Houston Port Terminal Railroad Association ("PTRA").[4]  The PTRA charged Plaintiff for detention, diversion, switching, and railcar storage under Freight Tariff PTRA 2000-B and Port of Houston Tariff No. 8.[5]  Plaintiff brings this suit to recover damages for these and other losses resulting from Sealift's delay in loading the cargo.

In its Third Amended Complaint (Document No. 31), Plaintiff asserts three claims against all Defendants: (1) breach of a maritime contract; (2) equitable subrogation; and (3) unjust enrichment.  Sealift moves to dismiss the Third Amended Complaint against it, asserting that Plaintiff has failed to plead sufficient

---

[2] Document No. 31 at 2.

[3] Id.

[4] Id. at 3.

[5] Id. at 3; id., ex. 1 at 4.

facts to state a claim under Rule 12(b)(6).[6] Plaintiff opposes the motion and alternatively seeks leave to amend.[7]

## II. Motion to Dismiss Standard

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one. *See* Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974). The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff is entitled to offer evidence to support the claims. Id.

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded facts in the complaint. *See* Lowrey v. Tex. A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997). To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[6] Document No. 38 at 1.

[7] Document No. 40 at 15.

3

misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1964-65 (citations and internal footnote omitted).

### III. Discussion

#### A. Choice of Law

The parties do not contest that Texas law is applicable to analysis of the claims in dispute. Both cite to Texas cases regarding the breach of contract claims,[8] and Plaintiff does not contest Sealift's reliance upon Texas law regarding substantive analysis of its unjust enrichment claim.

#### B. Breach of Contract

Plaintiff advances two theories for its breach of contract claim: (1) the parties' course of dealing gave rise to an implied contract, which was breached, or (2) Plaintiff is a third-party beneficiary of a U.S. Food Aid Booking Note for Invitation No. 087

---

[8] Document No. 38 at 8-11; Document No. 40 at 9; Document No. 42 at 3.

4

("the Booking Note"), a contract between Sealift and the United States for carriage of the Cargo.

The elements of breach of contract in Texas are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages sustained by the plaintiff as a result of that breach. Domingo v. Mitchell, 257 S.W.3d 34, 39 (Tex. App.--Amarillo 2008, pet. denied) (citing Southwell v. Univ. of Incarnate Word, 974 S.W.2d 351, 354-55 (Tex. App.--San Antonio 1998, pet. denied)). Whether an implied contract exists is determined from the actions of the parties. Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co., 480 S.W.2d 607, 609 (Tex. 1972). An implied-in-fact contract exists when the facts and circumstances show an objective manifestation of mutual intent to contract. Id. The parties' subjective states of mind are irrelevant. Roberts v. Healey, 991 S.W.2d 873, 880 (Tex. App.--Houston [14th Dist.] 1999, pet. denied).

In Count 1 of its Third Amended Complaint, Plaintiff alleges:

> Jacintoport and Defendants had a course of dealing whereby Jacintoport would provide stevedoring, warehousing, and services as a terminal operator for PL480 food aid cargo, as in this case. Concurrently, Defendants assumed responsibility for payment for Jacintoport's services.[9]

---

[9] Document No. 31 at 4.

5

The foregoing allegation that Plaintiff provided services to Sealift and Sealift paid for these services a sufficient number of times to constitute a course of dealing objectively implies beyond mere speculation the existence of a mutual agreement governing their relationship. Moreover, Plaintiff alleges there was a "pre-arranged schedule agreed to by Sealift, embodied in the U.S. Food Aid Booking Note for Invitation No. 087,"[10] which, although agreed between the United States and Sealift, specified estimated dates of arrivals for Sealift's vessels at Plaintiff's terminal facility, for the loading of cargo "pursuant to the parties' course of dealing." Whether part of Sealift's "responsibility for payment for Jacintoport's services" included charges incurred by Plaintiff for such things as demurrage, storage, and other costs related to delay is a fact-intensive inquiry that depends upon the precise nature of the parties' understanding. *See* Double Diamond, Inc. v. Hilco Elec. Coop., Inc., 127 S.W.3d 260, 267 (Tex. App.--Waco 2003, no pet.) (the "fact issue" arising from "circumstantial evidence" precluded summary judgment on whether the parties entered into an implied agreement, and whether that agreement incorporated previously-contracted-for rates and charges or one party's more recent unilateral price schedule). Such an inquiry is not appropriately resolved on a motion to dismiss. *See* Scheuer, 94 S. Ct. at 1686 (when reviewing sufficiency of a complaint, before

---

[10] Id. at 2.

reception of evidence, court's "task is necessarily a limited one").

Plaintiff has pled facts that indicate the existence of each of the other elements of a breach of contract action in Texas. Plaintiff asserts that it did, indeed, store the Cargo on Defendants' behalf, even past the scheduled arrival time, signifying performance and leading to the resultant damages Plaintiff alleges.[11] Sealift's nonpayment of storage costs and late arrival could, if true, and depending upon the exact nature of the parties' "course of dealings," constitute breach.[12] Plaintiff has sufficiently pled a claim based upon an implied contract with Sealift.

Plaintiff's third-party beneficiary claim, on the other hand, fails to state a claim upon which relief can be granted. Under Texas law, a party can be a third-party beneficiary only if the contracting parties "intended to secure a benefit to that third party, and only if the contracting parties entered into the contract directly for the third party's benefit," though it need not be *solely* for the third party's benefit. Stine v. Stewart, 80 S.W.3d 586, 589, 591 (Tex. 2002). A party cannot be an incidental third-party beneficiary to a contract, nor will a court create third-party beneficiary status by implication. Id. at 589. Here,

---

[11] Document No. 31 at 2-4, 7.

[12] Id. at 3, 5.

the Booking Note issued to Sealift by the Untied States Agency for International Development, dated August 31, 2007, identified and relied upon by Plaintiff in its Third Amended Complaint as a basis for its claim, *see* Walch v. Adjutant Gen.'s Dep't of Tex., 533 F.3d 289, 294 (5th Cir. 2008), provides that Sealift is "responsible for all expenses resulting from" a failure "to lift all or part of the shipment as originally booked" due to its own fault or negligence.[13] However, this clause governs liabilities between Sealift and the United States; it does not demonstrate an intent to secure a benefit to any port terminal operators, let alone Plaintiff specifically.[14] *See* Brown v. Fullenweider, 52 S.W.3d 169, 170 (Tex. 2001) (attorney could not recover fees as a third-party beneficiary under agreement incident to divorce; the agreement "merely allocated responsibility for any such fees" between the ex-spouses "as part of the division of their marital estate"). Accordingly, Sealift's motion will be granted with respect to Plaintiff's third-party beneficiary claims.

---

[13] Document No. 24, ex. 2 ¶ 5.

[14] *See* id., ex. 2. The contract does, in an entirely separate section, indicate that the Jacintoport terminal is the loading port. However, reading the loading port designation together with the later clause allocating costs between the United States and Sealift in the event of delay would be, at best, finding third-party beneficiary status by implication.

C.  Equitable Subrogation

"Subrogation is the right of one who has paid an obligation which another should have paid to be indemnified by the other." Tex. Ass'n of Sch. Bds., Inc. v. Ward, 18 S.W.3d 256, 258 (Tex. App.--Waco 2000, pet. denied) (citing Employers Cas. Co. v. Dyess, 957 S.W.2d 884, 886 (Tex. App.--Amarillo 1997, pet. denied)). This equitable doctrine arises where one party, "not acting voluntarily, has paid a debt for which another was *primarily liable* and which in equity should have been paid by the latter." Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co., 236 S.W.3d 765, 774 (Tex. 2007) (emphasis added). It is a "'legal fiction' whereby an obligation that is extinguished by a third party is treated as still existing to allow the creditor to seek recovery from the primarily liable party." Bennett Truck Transp., LLC v. Williams Bros. Constr., 256 S.W.3d 730, 733 (Tex. App.--Houston [14th Dist.] 2008, no pet. h.).

It is therefore not enough for Plaintiff to allege facts showing that its payment of the PTRA's Freight Tariffs was for Sealift's benefit, or otherwise resulted in a benefit to Sealift. These facts fall short of an allegation that Sealift was *primarily liable* for payment of the Tariffs, that is, that upon issuance of the Tariffs, *Sealift* was indebted to the PTRA, which debt Plaintiff extinguished by payment. *Cf.* Ortiz v. Great S. Fire & Cas. Ins. Co., 597 S.W.2d 342, 343 (Tex. 1980) (insurer, who paid for home repairs under fire insurance policy, intervened in homeowners'

negligence suit against third party who allegedly caused fire; insurer claimed that third party owed insurer repayment under equitable subrogation principles); *cf. also* Fortis Benefits v. Cantu, 234 S.W.3d 642, 644 (Tex. 2007) (insurer who paid car accident victim's medical bills claimed contractual subrogation, pursuant to insurance policy, against the third party driver who caused the car accident).

Plaintiff alleges that Sealift was primarily liable for payment due to its "failure to timely deliver the Vessels."[15] This allegation permits no inference that Sealift was indebted to the *PTRA* upon issuance of the Tariffs--rather, it is an allegation that Sealift became indebted to *Plaintiff* because of Sealift's failure timely to deliver the vessels, which caused Plaintiff to incur charges. In other words, *Plaintiff* was charged for the Tariffs, not Sealift; Plaintiff therefore extinguished its own debt--not Sealift's--and now seeks indemnity from Sealift.[16] These are not facts supporting an equitable subrogation claim, and Plaintiff's claim will therefore be dismissed.

---

[15] Document No. 31 at 6.

[16] Plaintiff also alleges that: "As the receiver of the railcars at the terminal in Houston," it had "no alternative but to remit payment," implying *Plaintiff's* primary liability to the PTRA. Document No. 31 at 6; *see also* id. at 3 ("Jacintoport was rendered unable to timely return the rail cars within the permitted free time and intake new cargo into its warehouse, resulting in the assessment of rail car detention charges, demurrage and other incidental charges by the [PTRA].").

D.   "Unjust Enrichment"

Plaintiff's third claim is entitled "Restitution/Unjust Enrichment."  Plaintiff alleges that Sealift was unjustly enriched by its nonpayment of the incidental and storage charges, and that its failure to make restitution "gives rise to a quasi-contractual obligation to return the benefits received by Defendants to Jacintoport . . . ."[17]  Quantum meruit is ordinarily the equitable remedy for the kind of unjust enrichment alleged here, namely, Plaintiff's valuable services rendered to Sealift by storing its cargo at considerable cost for a number of extra days due to Sealift's late arrival, which benefit Sealift accepted and enjoyed when it arrived late, loaded the cargo, and set sail.  *See* Pepi Corp. v. Galliford, 254 S.W.3d 457, 460 (Tex. App--Houston [1st Dist.] 2007, pet. struck) (characterizing as a basis for a quantum meruit claim a hypothetical assertion that "the opposing party is unjustly enriched by retaining the benefits of services rendered by the plaintiff" (citing Vortt Exploration Co. Inc. v. Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex. 1990))).

The facts alleged to support a quantum meruit claim still must "raise a right to relief above the speculative level."  Twombly, 127 S. Ct. at 1965.  Recovery under quantum meruit, which is "founded on unjust enrichment," requires that: (1) valuable

---

[17] Document No. 31 at 7.

11

services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; (4) under such circumstances as reasonably notified the person sought to be charged.  Vortt Exploration, 787 S.W.2d at 944.

Plaintiff alleges that it provided the service of storing the Cargo longer than expected due to Sealift's delayed arrival to the loading port, which delay further led to detention and demurrage charges.[18]  The safekeeping and subsequent loading of the Cargo were provided for Sealift, as carrier--a benefit accepted, as evidenced by the loading and, presumably, ultimate delivery of the Cargo. Finally, under the circumstances alleged, Sealift as the alleged owner, operator, charterer, and manager of vessels carrying cargo around the world can reasonably anticipate increased storage charges when delays result in increased storage time, particularly in a maritime setting, where delays often result in demurrage and related expenses.

### III.  Order

For the foregoing reasons, it is

ORDERED that Defendant Sealift, Inc.'s Motion to Dismiss Plaintiff's Third Amended Complaint (Document No. 38) is GRANTED IN PART, and Plaintiff's claims against Defendant Sealift that

---

[18] Document No. 31 at 3, 7.

Plaintiff is a third-party beneficiary of the Booking Note and for equitable subrogation are both dismissed; and Sealift's motion is in all other respects DENIED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 1st day of March, 2010.

```
                    _____
                         EWING WERLEIN, JR.
                      UNITED STATES DISTRICT JUDGE
```